**Weedon G. PARRIS, Jr., et al., Plaintiffs,**

**v.**

**SCHOOL COMMITTEE OF MEDFORD, MASSACHUSETTS, et al., Defendants.**

**Civ. A. No. 69-908-C.**

United States District Court
D. Massachusetts.

Oct. 31, 1969.

Henry F. Owens, III, Owens, Dilday & Brown, Boston, Mass., for plaintiffs.

Mark E. Gallagher, Jr., Medford, Mass., for defendants.

## OPINION

CAFFREY, District Judge.

This is a civil action in which jurisdiction of this court is invoked under 42 U.S.C.A. §§ 1981 and 1983, and 28 U.S.C.A. §§ 1343, 2201 and 2202. Plaintiffs are residents of Medford, Massachusetts, and the complaint describes them as "black parents of black children duly qualified to attend school in the Medford, Massachusetts Public School System." Defendants include the School Committee of the City of Medford, the Superintendent of Schools, the Assistant Superintendent for Elementary Education, and a Principal in the Medford school system.

Plaintiffs purport to bring this action on behalf of themselves and on behalf of "all similarly situated black citizens * * * who live in the City of Medford, Massachusetts."

Plaintiffs seek declaratory and injunctive relief "restraining defendants from maintaining a policy, practice, custom or usage of: (a) discriminating against plaintiffs and other black persons in this class because of race or color with respect to terms, conditions and privileges of education, and (b) limiting, segregating, and classifying plaintiffs in ways which deprive them and other black persons in this class of equal educational opportunities, the equal protection of the laws, and otherwise adversely affect their status as citizens because of their race and color."

Plaintiffs allege that respondents are applying Mass. General Laws, ch. 71, secs. 37C and 37D, in such a manner that the black children and black parents are being denied the equal protection of the laws. More narrowly, plaintiffs allege that there is one racially imbalanced grammar school in Medford, namely, the Hervey School. They further allege that prior to the filing of this case the respondents initiated a plan to alleviate racial imbalance in that school by bussing black children who live within the confines of what has been designated as the Hervey school district, to other grammar schools outside that district, namely, the Gleason, Waite, and Dame Schools. They specifically allege that no white children are being transported into the Hervey school district, although white children are being transported from one school district to another for the purpose of alleviating overcrowded conditions.

The following background facts have been established by the affidavit of Superintendent of Schools John Houston (Deft. Ex. A):

"The City of Medford is an incorporated municipality, located in Middlesex County of Massachusetts, and as of the 1965 census, contained 60,422 people, of

which approximately 1.7% are black. The land area of the city is 8.22 square miles. Its form of government is known as 'Council-Manager' (Plan E), Massachusetts General Laws, Chapter 43, sec. 93ff. It has an elected School Committee, and the Mayor of the City Council is Chairman of the Committee, by virtue of his office. The form of government has not changed during the period of time material in this case.

"The School Committee of the City of Medford is governed by Chapter 71 of the General Laws of the Commonwealth of Massachusetts, and with reference to the subject matter of this suit, is subject to sec. 37C and sec. 37D thereof. These two sections were added to the General Laws and became effective August 18, 1965. They are designed to promote racial balance and to encourage plans for the elimination of racial imbalance. The plaintiffs here allege as the gravamen of their complaint that the defendants are applying the above referred to sections of the law in such a way as to deprive black citizens of the equal protection of the law by discriminating against them, and that such action is being done by the Superintendent of Schools, the Assistant Superintendent of Schools, the Principal of the Hervey School, and the School Committee of the city, in accordance with the implementation of a school committee plan affecting racial imbalance.

"In 1964, prior to the enactment of the Racial Imbalance law, the school authorities of the City of Medford became convinced that there was racial imbalance in the Hervey School, an elementary school. This school is located in the West Medford area of Medford, and in that portion of West Medford which has become predominantly black, although there has been for well over seventy-five years a substantial black community residing in that area.

"The dwellings of the area are owner-occupied for the most part. It is not a depressed area. The area is, except for some neighborhood stores, almost entirely residential in character.

"In 1964, a racial imbalance study was authorized, and the Superintendent of Schools made a report on the matter, dated May 20, 1965. This report contains, on page 17, a reference to the beginning of the imbalance at the Hervey School, and the report makes, in Chapter 5, beginning at page 22, specific plans for overcoming a racial imbalance. This plan was adopted by the School Committee. (The May 20, 1965 report is in evidence as Plaintiff's Ex. 2.)

"The plan called for the elimination of the fifth grade at the Hervey, for an enlargement of the Gleason School district for the first four grades, by adding streets, the residents of which were black, and by assigning to another school district—the Waite School district—black pupils from Monument Street and Sharon Street. Also voluntary bussing to the Dame School was included.

"Massachusetts General Laws, Chapter 71, sec. 37D, prohibits the bussing of children out of their attendance district if there is any parental objection.

"The plan was reviewed with representative groups of parents of students affected in individual and group meetings. It had the approval of the area residents.

"The Superintendent of Schools received a Certificate of Commendation from the Boston Chapter of the NAACP, in connection with the solution of a problem. The School Committee also received a commendation from the State Board of Education.

"There was never any declaration by the State Board of Education of racial imbalance in any school in Medford. The plan adopted was a voluntary plan, not one imposed by Chapter 71, sec. 37D of the Massachusetts General Laws.

"There was no complaint or resentment formally expressed about the plan while in operation during a period of more than three and one-half years. This would include complaints directed to the School Committee of the City of Medford, to the State Board of Education or by resort to Court.

"During the time that this matter was under consideration, the City of Medford school system consisted of seventeen Elementary Schools, three Junior High Schools, and a High School. In November of 1965, the High School sustained a severe loss by fire and some of the school problems in Medford have been influenced by this loss. A new $18,-000,000.00 High School complex now under construction will be in operation no earlier than September 1970.

"On March 17, of 1969, the question of racial imbalance and the conduct of the plan was, for the first time since its inauguration, formally brought to the consideration of the School Committee. A copy of the minutes of the meeting, marked 'G', is attached as part of Defendant's Ex. A. The matter began with a letter from the wife of one of the plaintiffs of this bill. Subsequently, the Superintendent prepared an up-dated report on the subject matter, and submitted it to the School Committee, copy of which, marked 'H' is attached as part of Defendant's Ex. A. The plan, in an oversimplified way, would create a whole new concept of school lines and attendance areas. It would require the retention of some of the facilities remaining after the fire in the old High School area.

"The enrollment at the Hervey School showed, in 1965, a total of 163, of which 100 were white and 63 non-white. In 1966, the total was 162, of which the white was 103 and the non-white 59. The 1967 enrollment total was 164, of which the white was 98 and the non-white 66. In 1968, the total was 165, of which the white was 96 and the non-white was 69. Over the whole school system of Medford, in 1965, the total number of pupils was 10,143, of which 350 were non-white. In 1968, the total was 10,509 and the black population was 391. There is open enrollment of blacks only throughout the city.

"In 1961, in the parish which is located in the Gleason and Hervey School districts, St. Raphael's Grade School was started, and with the policy of a new grade each year, a substantial number of whites was increasingly diverted to the school from the Hervey School, laying the basis for imbalance.

"Prior to the school year 1965, before any re-districting had occurred or before any bussing had occurred, there were two hundred and twenty-three pupils in the then Hervey School district, of which one hundred and one were white and one hundred and twenty-two were non-white.

"According to the Certificate of the Public Safety Department of the Commonwealth, the Hervey School building can accommodate 350 people. This is not necessarily the same number that could be efficiently taught in the building.

"There are approximately thirty pupil seats available in the Hervey School as of September 1969. These are distributed over the four grades taught.

"With regard to special children, in 1965 it was determined, in order to put blacks in predominantly white schools, that special classes who were already mobile would be concentrated in the Hervey School from other schools. This provided additional accommodation for blacks. Subsequently, as the black population of the revised Hervey School district increased, it became necessary to count the handicapped children as part of the white population of the Hervey School to keep balance. The State law requires that they be counted in any event. The handicapped children consist of approximately thirty-two children, thirty-one of whom are white, and one black.

"The range of non-whites in the Hervey School has, during the years 1965 to 1968, been between sixty-three pupils and sixty-nine pupils. Black pupils are being bussed to maintain racial balance and with the exception of the handicapped children whites are not so bussed.

"In the Gleason School district, as white families move in to the area re-districted out of the old Hervey School attendance area, they can and would be bussed to the Gleason School.

"Sixty-nine blacks were transported by bus in 1965, and in the current year 128 blacks are being so transported. These figures include the voluntary bussing to the Dame and Gleason Schools, as well as the bussing within the Gleason district in which the children reside.

"In September 1969, a new policy was adopted by the School Committee (prior to notice of this bill of complaint) allowing crossing of district lines for people who wish to attend the Hervey School."

It has also been stipulated by counsel for the parties that:

(1) The outer boundary lines (hereinafter called the "perimeter") of the Hervey School District have not been changed since October 1965.

(2) Also, prior to October 1965, streets and parts of streets within the Hervey School District perimeter (hereinafter called "bussed streets") were changed to and redesignated as Gleason and Waite School Districts.

(3) No white students who reside within the Hervey School perimeter are transported out of the Hervey perimeter.

(4) No white students who reside outside the Hervey perimeter other than handicapped children are transported into the Hervey perimeter.

(5) Approximately forty (40) white students live to the immediate west of the Hervey perimeter in area normally denominated as the "Sagamore area."

(6) White students who live in the Sagamore area are normally transported to and attend the Gleason School.

(7) The Sagamore area is closer to the Hervey School than the Gleason School.

(8) Every school in Medford is overcrowded with the exception of the Hervey School.

The matter came before the Court on plaintiffs' application for a preliminary injunction and upon defendants' motion that the bill of complaint be dismissed.

The controlling authority on the issues raised by the cross-motions of the parties is the opinion of the Court of Appeals for this Circuit in the case of Springfield School Committee v. Barksdale, 348 F.2d 261 (1 Cir. 1965). There, plaintiffs sought injunctive correction of a racially imbalanced school situation, despite the fact that there were then in progress in Springfield, as indeed the stipulation and exhibits indicate there are in progress in Medford, active and continuous attempts by the School Committee to remedy the wrong complained of. There, as here, the administrative attempts to remedy the situation were begun well in advance of the lawsuit.

In *Barksdale,* the Court observed (at p. 264):

"Effective educational procedures' involve many factors, and must concern all students. The neighborhood plan is not simply a matter of administrative convenience and cost. In the elementary schools there are problems of transportation which may seem important to individual families, and there is, of course, beyond that the much mooted issue of large scale 'bussing'. Pedestrian crossing of traffic arteries is dangerous for the lower ages. Other values may exist, both for the children and the parents, in having the school close to the home. Correspondingly, the very correction of racial imbalance may have adverse effects upon the educational environment."

and the Court then stated, with reference to the opinion of the district court (p. 264):

" * * * Deciding what is excessive racial imbalance necessarily involves the resolution of expert appraisals of highly intangible factors. * * *

"To the extent that there may be an underlying constitutional right to ef-

fective educational procedures within the limits of the court order as we interpret it, the burden of performance is on the state. While there may be no general obligation to pursue state remedies first, * * * plaintiffs in this respect have no present need of any remedy whatever. This seems to us a peculiarly inappropriate time to assert the allegedly paramount authority of the federal courts. Plaintiffs are seeking against a state agency an equitable remedy not only not presently needed, but that may never be needed. * * * If defendants were to complete what they had already started, federal interference need never be requested."

From the record of the instant case it is clear that the City of Medford, acting through its School Committee and its Superintendent of Schools, is actively seeking to correct whatever racial imbalance presently exists in the Hervey School.

 Since the teaching of *Barksdale*, by which this court is bound, is that a district court is not to interfere with pre-litigation-instituted good faith administrative attempts on the part of a School Committee or school system to cure racial imbalance by the court's undertaking to grant injunctive relief, since it is undisputed that the school authorities in Medford had undertaken to administratively work out a solution for the relatively limited imbalance situation * affecting only the Hervey School, well in advance of the filing of this complaint, and since it further appears that proposals for the correction of this situation had been actively discussed and a specific plan had been put before the School Committee at least two months prior to the commencement of the action, it follows that on the facts of the instant case this court is under a mandate, from the opinion of the Court of Appeals in *Barksdale*, not to interfere *at this time* with the administrative attempts of the Medford School Committee and Superintendent Houston to correct the situation at the Hervey School. That the municipal authorities must act swiftly, however, in default of which court action will become appropriate and mandatory, is explicitly required by the decision of the United States Supreme Court, handed down on October 29, 1969, in Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19.

Defendants' motion that the bill of complaint be dismissed is allowed.

Order accordingly.

---

* If the "exceptional" white children now attending the Hervey School are properly included in the white pupil count, as Superintendent Houston's affidavit contends is required by state law (p. 359, supra), there may well be no racial imbalance at all at that school. For purposes of this opinion the existence of racial imbalance at the Hervey School has been assumed.